U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

DEC 15 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| UNITED STATES OF AMERICA | : | DOCKET NO. 2:08 CR 0111 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| RODOLFO ANGEL PASILLAS<br>JOSE PASILLAS | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

The defendants filed a Motion to Suppress [doc. 66], but did not file a Memorandum in Support. The Government filed an opposition [doc. 67] asking that the court order the defendants to file a memorandum, which they did on August 5, 2008 [doc. 75]. The Government then filed a response [doc. 79] arguing that the defendants are not entitled to an evidentiary hearing as they are not disputing the facts. The defendants, in their motion and supporting memorandum, have not alleged any facts about what transpired subsequent to the stop. Nor have the defendants submitted any facts disputing that verbal consent to search was given by Rodolfo Pasillas.

Law and Analysis

A defendant is entitled to an evidentiary hearing if he alleges sufficient facts that, if proven, would justify relief. *See Powell*, 354 F.3d at 370 (citing *United States v. Mergist*, 738 F.2d 645, 648 (5th Cir.1984)). The movant generally bears the burden of production and persuasion, but "if a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden shifts to the government to justify the warrantless arrest or search." *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir.1977).

The government asserts that Jose Pasillas struck the right side of the dividing line three times prior to being stopped. After he was stopped, Rodolpho Pasillas gave consent to search and a canine alerted to the vehicle. The vehicle was searched. The government avers that as a search incident to a legal, custodial arrest, the search of the vehicle does not violate the Fourth Amendment. The government gave a detailed account of the events in their brief. The defendants did not stipulate to the government's account, but neither did they offer an alternative account or specifically contest that the defendants were arrested prior to the search.

Under the facts provided by the government, the warrantless search was justified as a search incident to arrest under *U.S. v. Belton*, 453 U.S. at 460, 101 S.Ct. 2860, and *Chimel v. California*, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

The defendants do not contest the government's assertion, let alone allege facts that would, if proven, justify relief, *see Powell*, 354 F.3d at 370. Without the defendants presenting an alternate account, there are no disputed facts that require a hearing. The defendants merely contend that the stop and the subsequent search of the vehicle was illegal because it was executed without a warrant and did not fall within any exception.

A person is seized when a show of authority is sufficient to convince a reasonable person that he is not free to leave. *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). An investigative stop by the police, though a seizure, is constitutionally permissible if the police have a reasonable suspicion, supported by articulable facts, that criminal activity is afoot. *See Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967); *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir.2007). Reasonable suspicion is a lower

standard than is the probable cause required to make an arrest. *United States v. Jones*, 234 F.3d 234, 241 (5th Cir.2000).

Because there is no dispute that the search of Pasillas's truck was done without a warrant, the government bears the burden of proving that the initial stop and subsequent search were justified by reasonable suspicion, placing it within the protection of *Terry* and its progeny.

The officer effecting the stop of the Pasillas' vehicle alleged a violation of M.C.L.A. §§ 257.642[1] and 257.648[2] as the truck was swerving, the driver was over-

---

[1] **257.642. Laned roadways, traffic rules**

Sec. 642. (1) When a roadway has been divided into 2 or more clearly marked lanes for traffic the following rules in addition to all others consistent with this act shall apply:

(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety. Upon a roadway with 4 or more lanes which provides for 2-way movement of traffic, a vehicle shall be driven within the extreme right-hand lane except when overtaking and passing, but shall not cross the center line of the roadway except where making a left turn.

(b) Upon a roadway which is divided into 3 lanes and provides for 2-way movement of traffic, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle traveling in the same direction, when the center lane is clear of traffic within a safe distance, or in preparation for a left turn, or where the center lane is at the time allocated exclusively to traffic moving in the same direction the vehicle is proceeding and the allocation is designated by official traffic control devices.

(c) Official traffic control devices may be erected directing specified traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction regardless of the center of the roadway and drivers of vehicles shall obey the directions of the traffic-control device.

(d) Official traffic-control devices may be installed prohibiting the changing of

lanes on sections of roadway, and drivers of vehicles shall obey the directions of the traffic-control devices.

(2) A person who violates this section is responsible for a civil infraction.

M.C.L.A. 257.642

[2] Chapter 257. Motor Vehicles
**257.648. Signals for stopping or turning; signal lamp or light on commercial vehicle; violations**

Sec. 648. (1) The driver of a vehicle or bicycle upon a highway, before stopping or turning from a direct line, shall first see that the stopping or turning can be made in safety and shall give a signal as required in this section.

(2) A signal required in this section shall be given either by means of the hand and arm in the manner specified in this section, or by a mechanical or electrical signal device which conveys an intelligible signal or warning to other highway traffic, except as otherwise provided in subsection (3). When a signal is given by means of the hand and arm, the driver shall indicate his or her intention to stop or turn by extending his hand and arm from and beyond the left side of the vehicle and signal as follows:

(a) Left turn . . . hand and arm extended horizontally.

(b) Right turn . . . hand and arm extended upward.

(c) Stop or decrease speed . . . hand and arm extended downward.

(3) A commercial motor vehicle, other than those in transit from a manufacturer to a dealer, in use on a highway shall be equipped with, and required signal shall be given by, a signal lamp or mechanical signal device when the distance from the center of the top of the steering post to the left outside limit of the body, cab, or load of the commercial motor vehicle exceeds 24 inches, or when the distance from the center of the top of the steering post to the rear limit of the body or load of the commercial vehicle exceeds 14 feet. The measurement from steering post to rear limit shall apply to a single vehicle or combination of vehicles.

(4) A person who violate this section is responsible for a civil infraction.
M.C.L.A. 257.648

correcting, and turn signals were not used in violation of Michigan law. When the vehicle was stopped, there was a single key in the ignition and a strong smell of air freshner. The driver, Jose, did not make eye contact and he kept looking toward his passenger, Rodlolfo. Jose was questioned. He said that he had been bringing furniture from Texas for his mother. He could not tell the Officer where his mother lived. The officers asked to search, but Jose declined. Rodolfo exited the vehicle, said it was his, and gave permission to search. Within ten minutes of the initial stop, canine officers arrived and the dogs alerted on the vehicle. A search was conducted revealing a hidden compartment with $109,000. The truck and the currency were seized and the defendants were released.

Routine traffic stops are treated as *Terry* stops. *United States v. Brigham,* 382 F.3d 500, 506 (5th Cir.2004) (en banc). Pursuant to *Terry,* the court employs a two-part test to determine the legality of police investigatory stops. *Id.* First, we examine "whether the officer's action was justified at its inception." *Id.* Second, we then inquire "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Id.* Importantly, a detention "may last no longer than required to effect the purpose of the stop." *U.S. v. Vazquez,* 253 Fed.Appx. 365, 368, 2007 WL 3268459, 2 (5th Cir., 2007); *United States v. Jenson,* 462 F.3d 399, 404 (5th Cir.2006).

In determining whether reasonable suspicion exists in certain circumstances, courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). In doing so, courts must be careful to allow

"officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (internal quotations omitted).

An officer may "ask about the purpose and itinerary of a driver's trip during the traffic stop," as such inquiries are "within the scope of investigation attendant to the traffic stop." *Brigham,* 382 F.3d at 508. An officer may also "undertake similar questioning of the vehicle's occupants to verify the information provided by the driver." *Id.* (internal quotations omitted).

Here, it is clear that Officer Adamisin had reasonable suspicion of legal wrongdoing that justified extension of the initial traffic stop. Specifically, the "particularized and objective basis" for reasonable suspicion was the erratic driving giving rise to the suspicion that the driver was intoxicated from drugs or alcohol. After the stop, this reasonable suspicion was compounded by (1) Jose's nervous demeanor; (2) the inconsistencies in the stories given by Jose and Rodolfo; and (3) Jose's internally inconsistent answers regarding the travel itinerary. The search of the vehicle was then conducted pursuant to verbal consent and to the dog's alert.

The defendants do not dispute the fact that their vehicle struck the dividing line three times, they simply challenge the fact that stopping a vehicle for this reason is a violation of their constitutional rights. In support of this they cite *United States v. Walters,* 492 F.Supp. 2d 754 (W.D. Mich. 2007). The holding in *Walters,* however, was based on the credibility of the officer involved, not on a similar traffic violation.[3]

---

[3] The court in *Walters* held that officer lacked probable cause to stop a vehicle for alleged traffic infractions. Photographic evidence refuted the officer's claim that the vehicle did not have properly functioning license plate lights. Furthermore, the officer was not credible in testifying that the defendant twice committed lane violations. The District Court's decision not to credit the

6

The government provides a more detailed version of the facts as they occurred. There is essentially no contradiction. The erratic manner in which the vehicle was driven provided sufficient probable cause to stop the vehicle. The nervous behavior of the occupants and the dog's alert provided probable cause to search.

## Conclusion

Pursuant to the analysis above, the evidence in the record establishes that the defendants did in fact violate Michigan traffic laws and provided probable cause for Officer Adamisin to stop the vehicle to investigate a possible DWI after observing the truck swerve three times at 3:00 a.m.

There are no facts provided by the defendants as to what transpired subsequent to the stop, or any facts disputing that verbal consent was given by Rodolfo Pasillas.

The pleading requirements to trigger an evidentiary hearing do not exist at this time.

Under Rule 41(e), an evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact. *United States v. Harrelson*, 705 F.2d 733 (5th Cir. 1983). Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief. Accordingly, the motion for

---

officer' testimony about the lane violations was based in part upon its conclusion that the officer's testimony about the license plate lights was not credible. 24 NO. 15 CRIMLWNEWS 58

an evidentiary hearing and the motion to suppress will be denied.

Lake Charles, Louisiana, this 12 day of December, 2008.

／s／ Patricia Minaldi
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE